UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE EDWARDS, JR., | ) | Case No. 1:09 CV 0231 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

George Edwards, Jr., filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of supplemental security income. At issue is the ALJ's decision dated September 24, 2008, which stands as the final decision of the Commissioner. See 20 C.F.R. §416.981. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

The ALJ found that Edwards age 31 was capable of performing medium exertion labor despite his weight which fluctuated near 500 lbs. The ALJ found that Edwards' only severe impairment was morbid obesity and based on the testimony of a medical advisor, Dr. McKenna, the ALJ found that Edwards could perform substantial gainful activity that was available in significant numbers based on the medical-vocational guidelines of Appendix 2.

Edwards challenges these conclusions contending that the ALJ did not fully and fairly evaluate the evidence including ankle edema, chronic obstructive pulmonary disease, major depression, recurrent associated with "marked" impairment and , of course, obesity.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age,

3

education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

4

*Obesity:*

Dr. Gerblich, M.D., FCCP, [1] evaluated Edwards in connection with his SSI application in March 2006. (Tr. 119). Edwards complained of bronchitis, low back pain, sleep apnea and obesity, but indicated that he was neither taking any medication nor using a Continuous Positive Airway Pressure "CPAP" machine regularly. (Tr. 119). He reported that his shortness of breath had progressively worsened as he gained weight, and also indicated that he had consumed six beers a day for the last fifteen years. (Tr. 119). Dr. Gerblich found that Edwards weighed over 400 pounds and had swelling in his legs; Dr. Gerblich could not detect deep tendon reflexes in his arms or knees. (Tr. 120). He also found that Edwards had "excellent" muscle power in the arms and legs, normal range of motion, and good bending ability, and opined that Edwards had a "very athletic body trapped in morbid obesity." (Tr. 120-24). Upon testing, he found moderate restrictive and obstructive lung deficiencies. (Tr. 120, 125-34). Dr. Gerblich diagnosed Edwards with morbid obesity, obstructive sleep apnea and moderate chronic obstructive pulmonary disorder (COPD) with no evidence of hypoxemia. (Tr. 120).

In April 2006, state agency physician Dr. Hinzman assessed Edwards's physical abilities

---

[1] "Fellow of the College of Chest Physicians" (FCCP) is a title given to a doctor who specializes in pulmonology, thoracic surgery, and critical care medicine. FCCP is used as a post-nominal title, such as John Citizen, MD, FCCP. To be eligible for the Fellowship, a physician in the United States of America or Canada must be board certified in both a primary board and an applicable subspecialty board, have at least 18 months experience in the field, and be sponsored by two Fellows of the College. Non-physicians who do active work in chest medicine — including those with a Ph.D., Pharm.D., D.Sc., or a doctorally-prepared nurse — are also eligible for the fellowship. Physicians outside of the United States and Canada are also eligible for the Fellowship. International Fellows (also given the designation FCCP) must have three years' experience in their field after the completion of training. http://encyclopedia.thefreedictionary.com

5

and found that he could perform light work with environmental limitations against exposure to dust and gases and no climbing of ladders, ropes or scaffolds. (Tr. 160-64).

However, the medical advisor, Dr. McKenna, who practiced in the area of pulmonary disease .(Tr. 217) testified that Edwards' respiratory problems, based on his review of the test results, were non-severe. (Tr. 221). [2] Also this doctor testified that Edwards' obesity was non-severe, as well as the musculoskeletal impairments, including ankle edema. (Tr. 221-22). On cross-examination Dr. McKenna admitted that the physical findings showed deficiencies, but in his view the limitations did not reduce functionality. (Tr. 226). He analogized the situation to missing a kidney or a lung. (Tr. 225). When questioned about the need for leg elevation due to edema, Dr. McKenna said what Edwards needs to do is get up an walk. (Tr. 227). "[H]e shouldn't be sitting not, you know, for as much as he's sitting." (Tr. 227). The medical advisor summarized that Edwards' was a young, fairly agile obese subject who has disturbed sleep, felt tired, has pretty good physical ability, has no lifting impairment, but obesity would pose a problem with use of ropes, ladders or scaffolds, unprotected heights or balancing, and exposure to moving hazards. (Tr. 223).

Administrative consideration of obesity is governed by SSR 02-1p [2000 WL 628049], and as that ruling directs:

---

[2] The Commissioner argues that Dr. McKenna was a "specialist in pulmonary disease and internal medicine." However, his testimony was that be was board- certified in internal medicine and pulmonary disease. (Tr. 217). The American Board of Internal Medicine (ABIM) states on its website that it certifies internists and subspecialists including those in the field of pulmonary disease. "ABIM certifies one out of every three practicing physicians in the United States." See http://www.abim.org.

6

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.(footnote omitted).

The ALJ disagreed with Dr. McKenna and found morbid obesity constituted a "severe" impairment. (Tr. 13). Dr. McKenna was impressed by Dr. Gerblich's statement about Edwards' athletic body, and the ALJ emphasized this to find that Edwards could perform medium exertion. (Tr. 13, 120, 221). This finding is not all that different from the residual functional capacity from the state agency physicians. Dr. McKenna testified that there was no limit on lifting and carrying, and the state agency physicians' assessment included the capabilities for 6 hours each for sitting and standing/walking, and no restrictions on stooping, kneeling, crouching or crawling. (Tr. 161-62, 223). Dr. Gerblich found full ranges of motion in the back, knees, hips, ankles, and arms, and muscle testing showed normal strengths. (Tr. 123-24). At least commencing with the objective findings, there was support for a medium work finding. [3]

---

[3] As defined in SSR 83-10:

Medium work. The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light

7

*COPD and Residual Functional Capacity from State Agency Physician:*

The ALJ rejected the residual functional capacity assessment for light work from the state agency physician as not being an "acceptable medical source." (Tr. 16). SSR 06-3p explains:

> Under our current regulations, "acceptable medical sources" are:
>
> • Licensed physicians (medical or osteopathic doctors);
>
> • Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only;
>
> • Licensed optometrists, for the measurement of visual acuity and visual fields (for claims under title II, we may need a report from a physician to determine other aspects of eye disease);
>
> • Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle; and
>
> • Qualified speech-language pathologists, for purposes of establishing speech or language impairments only.
>
> See 20 CFR 404.1513 (a) and 416.913(a).

---

work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.).

TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2  1983 WL 31251,a t *6

8

SSR 06-03p, 2006 WL 2329939,at * 1 -2.

The state agency physicians are licensed physicians, so the ALJ's finding to the contrary is curious. See *Tyson v. Astrue*, 2009 WL 772880, at *11 (W.D.Wis.)("Like any other opinion from an acceptable medical source, opinions from state agency consultants are not binding on the administrative law judge."); *Nill v. Comm'r of Soc. Sec.*, 2009 WL 2868486, at *3-4 (M.D. Fla.). The residual functional capacity prepared by a state agency physician was a report from a licenced physician, hence a report from an "acceptable medical source," as defined in the regulations and 06-3p. The reason supplied by the ALJ for rejection of the residual functional capacity assessment from the state agency physician is simply illegitimate.

Furthermore, what distinguished the state agency physician's conclusion from that of the medical advisor, Dr. McKenna, is that the state agency physician adhered to Dr. Gerblich's finding of moderate COPD,(Tr. 120, 161), whereas Dr. McKenna found no severe respiratory ailment. There is a problem which no one appreciates, namely "specialization." All physicians were reviewing Dr. Gerblich's testing, so for purposes of evaluating opinion evidence under 20 C.F.R. §416. 927, supportability and consistency are not in issue, but specialization is a matter of concern over test interpretation. The record establishes that Dr. Gerblich is a Fellow of the College of Chest Physicians, hence highly accredited. On the other hand, Dr. McKenna is a board-certified internist with a subspecialty. The state agency physician's familiarity with COPD is an unknown factor, though. The regulations require the ALJ to give more weight to the opinion of a specialist about medical issues. See §416. 927(d)(5). There was no consideration of

9

specialization by the ALJ in evaluating the severity of Edwards' limitations due to moderate versus non-severe COPD.

Next, §404.927(f) sets out specific procedure for review of the state agency physician's residual functional capacity assessment. It instructs that state agency physicians are " highly qualified" and experts in Social Security Disability evaluation. See §416. 927(f)(2)(i). The regulation the goes on to mandate that their opinions are given weight:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(f)(2)(ii).

Medical advisors' opinions do not receive this degree of deference. Compare §416.927(f)(iii). It appears that the determination in Edwards' case had the reverse effect with the ALJ favoring the opinion from the medical advisor and not following the regulatory mandate of affording the state agency physician's opinion controlling weight unless an adequate explanation is provided consistent as would be provided for the opinion from a treating physician. The Court must conclude that without this requisite analysis, the determination is not supported by substantial evidence.

10

*Pain & Credibility:*

The ALJ also considered Edward's subjective complaints of shortness of breath, difficulty standing and walking, knee and back pain, and need for leg elevation. (Tr. 15). Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The ALJ nominally noted the factors for consideration under SSR 96-7p, but did not analyze Edwards' complaints of pain through the prescribed procedure. (See Tr. 15-16).

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence, but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secretary of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987); Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2. SSR 96-7p stresses:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on

11

credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at * 2.

The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3). See *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2. The ALJ accepted that Edwards had underlying medical determinable impairment of obesity.

The second question then is the reasonableness of the alleged debilitating pain. The regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

12

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii).


The ALJ rejected the subjective complaints stating," I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (Tr. 15). The ALJ then repeats Dr. McKenna's testimony.

This reasoning is obviously circuitous. The ALJ begins with Dr. McKenna's testimony and ends with it. In reality there is no actual consideration of the subjective complaints. The ALJ rejects them for being inconsistent with Dr. McKenna's testimony without any analysis in line with SSR 96-7p or 20 C.F.R. §416.929(c) and their multiple factors approach to subjective pain. The ALJ's determination was not supported by substantial evidence because only objective factors were given consideration, contrary to Social Security directives.

13

*Evidence of Psychological Impairment:*

The ALJ found no severe mental impairment despite Dr. Leventhal's report. Dr. Leventhal, Ph.D., consultatively examined Edwards for the state agency on March 30, 2006. (Tr. 135-41). He found that Edwards showed moderate impairment in concentration₁, but had no deficits with respect to memory or mental computation; he also found "both adequacy and impairment" with respect to Edwards's judgment. (Tr. 139-40). He diagnosed Edwards with major depressive disorder, eating disorder and alcohol dependence, and assigned a Global Assessment of Functioning [ GAF] score of 35, indicating major mental impairment. **[4]** (Tr. 140-41). Dr. Leventhal concluded that Edwards had no impairment in his ability to relate to others, but that Edwards had marked impairments in his ability to understand, remember and follow instructions; maintain attention, concentration, persistence or pace (including performance of simple repetitive tasks); and to withstand the stress and pressure of daily work. (Tr. 141).

---

[4] A GAF score of 31 to 40 is described as indicating: "**Some impairment in reality testing or communication** (*e.g.* speech is at time illogical, obscure, or irrelevant) **OR major impairment is several areas, such as work or school, family relations, judgment, thinking or mood** (*e.g.*, depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, p. 34 (4th Ed. text revision 2000).

The GAF score "represents 'the clinician's judgment of the individual's overall level of functioning,'" not necessarily the severity of impairment. *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 415, 2006 WL 3690637 (6th Cir. Dec. 15, 2006); *Wesley v. Comm'r of Soc. Sec.*, 2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000) (quoting Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed.1994)). For example, a GAF score in the 41to 50 range may reflect either the clinician's opinion that the claimant has "serious symptoms" **or** "serious impairment" of social or occupational functioning. *Kornecky v. Comm'r of Social Security,* 167 Fed.Appx. 496, 511, 2006 WL 305648, 110 Soc. Sec. Rep. Serv. 315 (6th Cir. Feb. 9, 2006). The score itself "does not establish an impairment seriously interfering with the plaintiff's ability to perform basic work activities." *Id.*, (quoting *Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)). Further the ALJ's failure to refer to a GAF score in formulating residual functional capacity does not make this formulation unreliable. *Kornecky*, 167 Fed. Appx. at 511; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 469 (6th Cir. 2003). The Commissioner has determined that there is no direct correlation between GAF scores measurements and the mental disorder severity listings. 65 Fed. Reg. 50746-01, 5076-4, 5076-5, 2000 WL 1173632 (F. R.); *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006)(unpublished). Consequently, the GAF score does not reflect a judgment on the severity of the mental impairment *vis-à-vis* the listed impairments.

14

A state agency reviewing physician completed a psychiatric review technique (PRT) as directed by 20 C.F.R. §416.920a. The primary purpose of the PRT is to assess whether or not a claimant's mental restrictions meet or equal the listing of impairments. It incorporates assessment of severity as described under §12.00C of the Listing of Impairments of Appendix 1. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C. See 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3). The procedure is to rate "four broad functional areas" of activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation. See 20 C.F.R. §404.1520a(c)(3); §416.920a(c)(3). The first three functional areas are rated on the five point scale of "none," "mild," "moderate," "marked," and "extreme." See §404.1520a(c)(4); §416.920a(c)(4). The last area, deterioration or decompensation is rated on the four-point scale of "none," "one or two," or "three, four or more." *Id.*

The state agency physician found "mild" restriction in activities of daily living and social functioning, no episodes of decompensation, but he disagreed with Dr. Leventhal's conclusions to find only "moderate" difficulties with concentration, persistence, and pace based on the record under the categories of affective disorder and substance addiction disorder.(Tr. 142-52).

The state agency physician did find "severe" mental impairment. Generally, non-severe mental impairment is indicated when the degrees of restriction in the PRT are "mild" or "none." See 20 C.F.R. §416.920a(d)(1). The state agency physician's conclusion was that Edwards was capable of performing simple, repetitive tasks in a work environment with few changes and no strict production quotas. (Tr. 158).

15

Psychiatrist, Dr. Marquis, testified as the second medical advisor at the administrative hearing disagreeing with Dr. Leventhal's diagnoses, and noting that Edwards' eating and sleeping issues were physical rather than mental . (Tr. 228-29). He also noted that Edwards disagreed with Dr. Leventhal's summary of his alcohol use .(Tr. 229). He further testified that there was no support for the diagnosis of depression apart from the fact that Edwards appeared sad, and that this was not enough .(Tr. 229-30). He concluded given the lack of history of prescribed treatment, no medication and no hospitalizations, there was no severe mental impairment. The ALJ cited only this testimony as the basis for his determination. (Tr. 14).

The ALJ's analysis clearly ignored the regulatory requirements for medical opinion under §416.927, by neglecting to consider the report from the consultative psychologist and the state agency physician's mental residual functional capacity, to which the regulation anticipates deference, as explained earlier.  The ALJ ignored the restriction to simple, repetitive work without any reasoning. The ALJ's determination was therefore not supported by substantial evidence.

*Remand:*

Congress has authorized remand or remand to the Commissioner under the fourth sentence of 42 U.S.C. §405(g).  See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under the fourth sentence. *Faucher*, 17 F.3d at 175-76.  The Commissioner's decision may be reversed and benefits awarded only when the Commissioner's

16

decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.  *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176;  *Mowery v. Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). However, the evidence of physical limitation tends toward light exertion, and the evidence of mental impairment presents a grab bag of marked to no impairment. Proof of disability is not overwhelming nor strong and unopposed.


## *CONCLUSION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying supplemental security income is not supported by substantial evidence.  However, remand under the fourth sentence of 42 U.S.C. §405(g) is the remedy for reconsideration of all evidence concerning physical and mental impairment.  Accordingly, the decision by the Commissioner is reversed and remanded for reconsideration.


                    s/James S. Gallas
United States Magistrate Judge

Dated: October 22, 2009